Steven L. Rinehart (USB #11494)
**FETZER SIMONSEN & BOOTH, P.C.**
50 West Broadway, Suite 1200
Salt Lake City, UT 84101
Telephone: (801) 328-0266
Mobile: (801) 347-5173
Facsimile: (801) 665-1292
Email: steve@mountainwestlaw.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| EZQUEST, INC., a California corporation;<br><br>                              Plaintiff,<br>vs.<br><br>BAORUI, an individual;<br><br>                              Defendant. | **PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Judge Clark Waddoups<br><br>Case No. 2:12-CV-730 |

COMES NOW the Plaintiff EZQuest, Inc., by and through counsel undersigned, and Pursuant to Rule 65(b) makes application to the Court under exigent circumstances for an Ex Parte Temporary Restraining Order.

### ARGUMENT

Plaintiff EZQuest, Inc. ("EZQuest") has been the registrant of the generic top-level domain name <ezq.com> (the "Disputed Domain") on the Internet since December 24, 1996, which domain the Plaintiff has used to retail computer parts and computer storage devices, particularly industrial computer readable storage devices such hard disk drives and RAID disk

1

arrays. EZQuest is wholly owned by Ebrahim Zmehrir and his wife, and provides their sole source of income. The WHOIS history of the Disputed Domain from its original creation date through the present is chronicled in the detail reports collectively annexed hereto as **Exhibit A**.

On, or about, May 8, 2012, using a stolen username and password, a hacker identifying himself only as Baorui successfully "hacked" the GoDaddy registration account of the Plaintiff, and transferred the Disputed Domain to its current registrar, eName, in China. This hacker accessed the Plaintiff's GoDaddy registration account using a stolen password, changed the administrative setting to forward Plaintiff's emails to an email account not controlled by the Plaintiff, and initiated a transfer of the Disputed Domain, confirming the transfers in the middle of the night. [*See* Declaration of Ebrahim Zmehrir ("Zmehrir Decl.") attached hereto as **Exhibit B**, ¶¶ 2 – 3.]

Upon learning of the theft, the Plaintiff promptly contacted GoDaddy to report the fraudulent transfer. GoDaddy informed the Plaintiff in correspondence annexed hereto as **Exhibit C** that it could do nothing and recommended that the Plaintiff seek redress from a legal authority on the matter. [*Id.* ¶ 4.]

The Plaintiff realizes several hundred thousand dollars in sales per month using the Disputed Domain, and now stands to lose overnight all control of the Disputed Domain along with the Plaintiff's only source of income and entire investment in the Disputed Domain and website. As further shown below, the Defendant is now attempting to wholesale the Disputed Domain to any interested buyer. [*Id.* ¶ 5.]

The Plaintiff promptly hired Plaintiff counsel to file filed a UDRP action with the National Arbitration Forum (NAF) under the Uniform Domain Name Resolution Policy (UDRP), seeking that the Disputed Domain be transferred back to the Plaintiff. After considering the

rights of the parties, in a decision on July 3, 2012, the NAF ordered that the Disputed Domain be transferred back to the Plaintiff in a written decision attached hereto as **Exhibit D.**

Very importantly, during the pendency of the UDRP case, the Disputed Domain was "locked" by order of ICANN (the Internet Corporation for Assigned Names and Numbers) to prevent the Respondent (and current Defendant) in arbitration from selling or otherwise transferring the Disputed Domain and irreparably harming the Plaintiff.  During this UDRP dispute, the Plaintiff was therefore not facing the threat of irreparable harm that he is now.

The Defendant and its registrar eName, both in China, ignored the UDRP arbitration before the NAF, despite being legally obligated to participate in it, then refused to transfer the Disputed Domain back to the Plaintiff in accordance with the decision of the NAF.  The Disputed Domain registrar eName and the Defendant informed Plaintiff that they had filed litigation in China absolving them of any responsibility to return the Disputed Domain, and that eName was unlocking the Disputed Domain to allow it to be sold.  Plaintiff has attempted to verify that a Chinese court ordered the Disputed Domain be kept in China and has been informed that no such order exists and no filing fee has been paid to initiate any case before any Chinese court.

**A.**     **The Disputed Domain Is About to Be Irreparably Lost.**

The Plaintiff has learned that the Defendant/cyberpirate, whose identity is unknown, is currently attempting to wholesale the Disputed Domain to the first interested buyer online at http://www.4.cn/search/detail/pid/2378841.  A screenshot of the Defendant's advertisement is attached hereto as **Exhibit E**.  This action would result of the total loss of the Plaintiff's business and inability to remedy the domain theft.

**B.**     **The Plaintiff Will Suffer Irreparable Harm If the Disputed Domain Is Lost.**

All three-letter .com gTLD combinations on the Internet have been registered. These three-letter domain names regularly sell for in excess of $100,000, and the <ezq.com> Disputed Domain is the only domain in which the Plaintiff can reflect its EZQ Mark. It will be impossible for the Plaintiff to recover a judgment against the cyberpirate of unknown identity in China, or to recover the lost revenue the Plaintiff will sustain. The Defendant stole the Disputed Domain for the purpose of reselling for a substantial sum.

C.   **The Defendant Has Already Been Ordered To Transfer the Disputed Domain, and There Is A Substantial Likelihood the Plaintiff Will Prevail On The Merits.**

All registrants of gTLDs (e.g. .com, .net, .info, org) must consent to the UDRP upon registration of the gTLD. The UDRP is attached hereto as **Exhibit F**. It requires, in paragraph 4, that the registering party of any gTLD be bound by arbitration before any ICANN approved dispute resolution provider. The Defendant agreed to be bound by the UDRP, then refused to participate in the UDRP proceedings before the NAF, an ICANN approved dispute resolution provider. The Defendant was ordered to transfer the Disputed Domain to the Plaintiff by the NAF, and refused. This is a clear cut case of domain theft and cyberpiracy. There is a substantial likelihood the Plaintiff will prevail on the merits.

The Defendant will not be harmed by the imposition of the proposed TRO as the Defendant is not, and has not, been making regular use of the Disputed Domain. Rather the Defendant is attempting to liquidate the Disputed Domain, which could be returned to the Defendant by the Court upon a showing such relief is warranted.

D.   **As Defendant Has Shown an Unwillingness to Cooperate With Binding Orders, and an Order Upon VeriSign In Appropriate.**

Plaintiff's counsel has conferred with VeriSign's counsel in Virginia, and VeriSign has agreed to act immediately to lock and transfer any distressed domain upon order of the Court, but

4

will not act without an order of the Court. VeriSign's counsel was friendly to Plaintiff's counsel and, in fact, forwarded two sample orders to Plaintiff's counsel from other similar cases, recommending that Plaintiff's counsel use the language from these orders in proposed orders from this Court to VeriSign. These samples are collectively attached hereto as **Exhibit G**. Plaintiff has attempted to incorporate the language preferred by VeriSign into his proposed order attached herewith as **Exhibit H** (also being forwarded in Word format to the Court via email). VeriSign has represented to Plaintiff's counsel that it has no objections to a TRO of this type.

## CONCLUSION

Given the showing of theft by the Plaintiff, the near-imminent sale of the Disputed Domain by the Defendant, the complete loss of the Plaintiff's business that would take place were the Disputed Domain to be sold, and other arguments made herewith, the imposition of the attached TRO upon the Defendant is warranted in the case to prevent irreparable harm to the Plaintiff. Should the Court have questions in this regard, Plaintiff's counsel request the opportunity to confer with the Court in person or telephonically.

This Application is supported by an affidavit of the Plaintiff attached hereto and the written representations of Plaintiff's counsel hereinabove.

DATED AND SIGNED this _30_ day of July, 2012.

/s/ [signature]

STEVEN L. RINEHART
*Attorney for the Plaintiff*